IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Chanel Crump, )<br>)<br>Plaintiff, )<br>v. )<br>Stericycle, Inc., )<br>)<br>Defendant. ) | Case No. 23 CV 14817<br><br>**Jury Trial Demanded** |

**COMPLAINT AT LAW**

NOW COMES the Plaintiff, Chanel Crump, ("Plaintiff") by and through her undersigned counsel of record, and complains against Defendant Stericycle, Inc ("Defendant") as follows:

**INTRODUCTION**

1. This case is filed based on Defendant's violations of the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2601 *et seq.* and 5 U.S.C. § 6381 *et seq.*, including, but not limited to terminating Plaintiff after years of dedicated service in retaliation for taking FMLA leave beginning on January 17, 2023 to obtain medical care for her damaged rotator cuff because she could not raise her arm due to extreme pain. She had surgery for this serious medical condition on February 10th, 2023.

2. This case is also filed based on the Defendant's interference in the Plaintiff's FMLA rights.

3. Plaintiff's ability to financially support herself and help to support her family came to an abrupt end when Defendant unlawfully discriminated against Plaintiff and terminated Plaintiff simply because Plaintiff exercised her statutory right to take medically necessary FMLA leave for her own serious medical condition.

1

4. In the alternative and/or as addition evidence to support Plaintiff's allegation of FMLA retaliation/interference, Defendant took retaliatory action against the Plaintiff for her intent or taking of FMLA and interfered with her FMLA rights due to her taking leave to provide medical assistance to her covered family member.

5. Plaintiff was on approved FMLA leave from the job on an intermittent basis to take care of her ill grandmother, who resides with the Plaintiff.

6. The first time Plaintiff had approval for FMLA leave for her grandmother was in 2014 and she renewed that intermittent FMLA leave until 2022. Plaintiff re-certified every six months for leave and in so doing, she fulfilled the Defendant's procedural-requirements.

7. Despite doing exceptional work, and taking permitted FMLA leave, her supervisors made frequent negative comments, sometimes in writing in her evaluations, demonstrating their continued animus to the Plaintiff due to her taking time off as covered by FMLA. These negative evaluations interfered with her FMLA rights.

8. Despite Plaintiff's years of dedicated employment and outstanding job performance, Defendant retaliated against Plaintiff for taking necessary FMLA leave and unlawfully terminated Plaintiff for taking necessary FMLA leave.

## PARTIES

**a. Plaintiff**

9. Plaintiff, Chanel Crump, is an individual resident of Illinois.

**b. Defendants**

10. Defendant, Stericycle, Inc is a medical waste disposal firm doing business in Bannockburn, Illinois. Plaintiff is employed in a division of Defendant handling collections of debts.

11. Defendant is an employer under FMLA, 29 U.S.C 2611 (4).

12. At all times relevant hereto, Defendant was an employer engaged in an industry affecting commerce, and had fifty or more employees for each working day in each of twenty or more calendar weeks.

13. At all relevant times herein Defendant is and has been a covered entity under the FMLA pursuant to 29 U.S.C. § 2601, *et seq*

14. Plaintiff was entitled to and met the requirements for leave under FMLA generally, as alleged elsewhere in this complaint, and specifically under FMLA 29 U.S.C 2612 (a)(1).

15. Defendant was a qualified "FMLA" employer under the FMLA in general and specifically employed fifty employees within seventy-five miles of that worksite in accord with 29 USC § 2611 (2)(B)(ii).

16. Plaintiff was terminated from her employment with Defendant on April 12, 2023 shortly after Plaintiff returned from her FMLA leave.

## JURISDICTION AND VENUE

17. Jurisdiction over the causes of action contained in this Complaint is conferred by 28 U.S.C. § 1331, as same arises under the laws of the United States. This action is brought pursuant to the Family Medical leave Act ("FMLA"), 29 U.S.C. §2601 et seq..

18. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that Defendants employed Plaintiff in this judicial district, and all or a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## STATEMENT OF FACTS REGARDING: FMLA INTERFERENCE AND RETALIATION

19. Plaintiff worked for Defendant on a temporary basis beginning in April 2008 but was promoted to full time as a collection's representative in November 2008.

20. Plaintiff's beginning pay rate was $17.00 and ending at $25.00 per hour, showing, via the continued increases to her rates of pay, her work performance was a success.

21. Plaintiff had an exceptional career with Defendant, meeting or exceeding her work goals and duties.

22. Plaintiff duties included making collections on debts, making calls to clients owing Defendant for these debts and responding to emails regarding the same.

23. Defendant required a minimum of 25 calls per day. Plaintiff typically exceeded that number of calls, though in some periods Plaintiff struggled with this goal and other goals, partly due to the time off from FMLA.

24. Defendant's use of FMLA as a negative in her job evaluations and goals was a constant FMLA interference violation.

25. Plaintiff was on approved FMLA leave from the job on an intermittent basis to take care of her ill grandmother, who resides with the Plaintiff.

26. Plaintiff was first on approved for FMLA leave in 2014 for her Grandmother and she renewed that intermittent FMLA leave until 2022.

27. Plaintiff re-certified every six months for leave and did so fulfilling the filing requirements.

28. Despite doing exceptional work, and taking permitted FMLA leave, her supervisors made frequent negative comments, often in writing in her evaluations, demonstrating their continued animus to the Plaintiff taking time off as covered by FMLA.

29. As an example of Defendant's hostility and interference in her FMLA rights, in 2015

Defendant deducted from her performance evaluation and ratings due to her FMLA time off. Plaintiff wrote of the negative effect of the FMLA leave (which Defendant did not correct):

    a. "My grandmother became very ill during the second half of the year and my attendance at work has been affected due to FMLA leave to care for her. Therefore my productivity shows as a decline" (pgs. 68, 86)

30. While this was a self evaluation, it demonstrates that Defendant expected the same performance, despite Plaintiff taking time off for FMLA. This is a retaliation and an interference with Plaintiff FMLA, which continued through the end of her employment and was partly or wholly the reason for her termination.

31. As further proof of the negative effects FMLA had, due to Defendant's policies, Plaintiff manager did not correct or adjust for the effect of these FMLA absences in her 2015 evaluation.

32. Thus it is clear that Defendant did not take into account Plaintiff's FMLA leave in her evaluation, rather Defendant used the protected time off as a negative in Plaintiff's job evaluation and eventually in her termination.

33. This 2015 FMLA retaliation and interference unfortunately is beyond the three year limitations period for FMLA claims, but is cited by Plaintiff as evidence of the FMLA interference and long term lack of consideration of her FMLA leave.

34. However, a similar FMLA interference that occurred within the three-year window is Defendant's August 12, 2022 hostility expressed about her FMLA.

35. Plaintiff's manager, Lynn T. Scheithe, wrote in her 2022 job evaluation:

It was a bit of a challenge for Chanel to meet her Cash Goals Target partial due to her

5

being out on leave. … Improvement needed. (Pg. 31).

36. Defendant was citing to Plaintiff's FMLA leave, and clearly in 2022 Plaintiff's taking of FMLA was held against her in her evaluation by Defendant.

37. These negative comments about her attendance continued into late 2022 and early 2023 while Plaintiff was on FMLA.

38. In Defendant's February 27, 2023 review of Plaintiff (Pg. 29), Defendant commented on Plaintiff's "attendance, unexplained absences", when the vast majority of Plaintiff's time off in this period was for FMLA purposes, thus again Defendant held Plaintiff's use of FMLA as a negative, thereby interfering and retaliating against her for Plaintiff's FMLA leave.

39. This 2023 negative evaluation was given to Plaintiff in the midst of her FMLA leave which began on January 17, 2023.

40. On December 27, 2022, Plaintiff was put on a Performance Improvement Plan ("PIP"). Lynn T. Scheithe told Plaintiff that it was John Ryan, who put Plaintiff on the PIP.

41. Lynn T. Scheithe did not discuss the PIP with Plaintiff after initial meeting in December despite the PIP including scheduled meetings to discuss the PIP.

42. The PIP was for 30 days and stated her performance must improve by January 27, 2023 or she might face termination of her job.

43. Defendant's PIP however was yet another FMLA interference, as it cited Plaintiff's absences which should have been covered by her FMLA for her shoulder, but Defendant did not apply those absences properly to her FMLA.

44. For example Defendant's PIP listed as a negative rating on attendance Plaintiff's absence on November 25, 2022; November 22, 2022; November 29, 2022 and December 19,

6

2022.

45. However on December 19, 2022 Plaintiff saw a medical provider for her shoulder injury, thus Defendant should have applied FMLA to this absence, or at least inquired if the absence was FMLA related, yet Defendants used what should have been FMLA absence as a negative job evaluation in violation of FMLA.

46. While the PIP contained a boilerplate disclaimer that the absences listed were not for FMLA, it is clear that Defendant did not inquire if the absences were for serious medical reasons, because if they had Defendant would not have listed the clear FMLA covered FMLA related absence of 12/19/22.

47. The PIP also noted that Plaintiff's performance levels were decreased, again Defendant failed to account for or consider the affect of Plaintiff's FMLA absences had on her performance.

48. These negative performance points had been demonstrated in years prior, and now were included in her 2023 PIP.

49. A final note in the PIP confirmed that Defendant's tied her absences (FMLA and non) to her performances, and thereby used her FMLA as a negative.

50. The PIP scheduled four to seven meetings with Plaintiff's supervisor, but her supervisor failed to hold any of these meetings.

51. Plaintiff went on FMLA leave on January 17, 2023. She returned to work on March 21, 2023 and was terminated April 12, 2023.

52. The FMLA leave was to expire on March 24, 2023.

53. Plaintiff texted her manager, Lynn T. Scheithe on March 17th 2023 asking to return from leave and Lynn texted her that she had to get approval from HR Rep Taylor Thomas.

7

54. Plaintiff sent the return to work to Taylor Thomas and Lynn T. Scheithe via email and Lynn texted it was "OK to return to work March 21st."

55. Plaintiff returned to work but was locked out of the computer/communication system. Therefore, she couldn't sign into the system not due to her fault and not because she did not make efforts to work/log-in.

56. Between March 21st and March 27th, Plaintiff was unable to resume working for reasons related to employer mix-up and system issues, not due to Plaintiff's fault.

57. On March 30, Plaintiff became ill. Though she called Workforce Management at an 800 number and also called Lynn T. Scheithe, she was told that absence would be "unexcused."

58. Plaintiff was still sick the following Friday and saw the doctor on Tuesday. She worked from home part of this time.

59. Plaintiff returned to work on April 10th. She did not bring a doctor's note because she was not ill continuously during this time.

60. The termination letter sent to Plaintiff's home on April 11 started: "Due to attendance, if you do not have a doctor excused for the period 3-30 to 4-13, you will be terminated."

61. However. the letter Plaintiff received a second letter dated April 12, 2023 stated: "This letter is to inform you that your employment with Stericycle will be terminated effective today, April 12, 2023, based upon your work performance, we no longer feel that your continued employment with Stericycle is in our best interest."

62. Thus the reasons for the termination were shifting from "attendance" to undefined "work performance".

63. Caretina Tellez, HR Senior Rep and Lynn T. Scheithe met with Client and gave her a

termination letter in a meeting at the office.

64. It is clear that the negative attendance reference was including Plaintiff's FMLA time, as her non-FMLA absences were minimal, or were due to Defendant's own system issues.

65. Plaintiff was an employee of Defendants as defined by the FMLA.

66. At the time of application for FMLA protected leave the Plaintiff had worked continuously for the Defendants for more than (12) twelve months preceding the request for leave.

67. At the time of application for FMLA protected leave the Plaintiff had worked more 1250 hours during the twelve months preceding her requests for leave

68. Based upon the Plaintiff's qualification for FMLA Plaintiff was qualified for and could take up to twelve (12) weeks of FMLA leave.

69. Plaintiff was entitled to and met the requirements for leave under FMLA in general and specifically under requirements of 29 USC § 2612 (a)(1).

70. Plaintiff was a qualified, competent, and dedicated employee that was performing all of his job duties in a reasonable and acceptable manner during all relevant times herein.

71. Plaintiff performed all of her job duties in a manner that met the Defendants' legitimate expectations.

72. Defendant's actions and/or inactions intentionally, willfully, created a situation in which Plaintiff was forced to choose between medical care and losing her job.

73. Such willful, intentional acts and/or inactions are in direct violation of the FMLA and effectively undercut the intent of the Act.

74. Such actions and/or inactions by Defendant substantially interfered with Plaintiff's substantive rights under FMLA

75. Termination imposed by the Defendant upon the Plaintiff was without basis and was pretextual.

76. Termination were retaliations for Plaintiff's attempts at or applications for FMLA leave and/or for her taking of FMLA leave.

77. Such retaliation is in violation of the FMLA.

78. Plaintiff would not have suffered such actions/inactions/conduct at the hands of the Defendant but for availing herself of the rights under FMLA.

79. Defendant's actions and/or inactions taken under such circumstances interfered with and unduly burdened the Plaintiff's exercise of rights guaranteed to Plaintiff under the FMLA.

80. Defendant has and continues to unlawfully interfere with and burden the rights of its employees with regard to the manner in which it administers employees' FMLA.

81. Plaintiff had an outstanding work history. There was no legitimate non-discriminatory non-retaliatory basis for Plaintiff's termination.

82. Plaintiff has suffered severe damages as a direct and proximate result of Defendant's unlawful conduct as described herein, including, but not limited to, the following: loss of employment, lost wages, loss of benefits, cost of relocation and other damages.

83. All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law and permitted under Federal law, Illinois law and other state laws.

84. All allegations plead herein are plead with personal knowledge as to those allegations to which Plaintiff has such knowledge and based upon "information and belief" as to all other allegations.

## COUNT I
### *RETALIATION IN VIOLATION OF THE FMLA*

85. Plaintiff re-alleges and incorporates all paragraphs of this complaint as if fully set forth herein.

86. Plaintiff suffers from a serious medical condition that requires medical treatment.

87. Plaintiff was an eligible employee under the FMLA, insomuch as she had been employed for at least 12 months and had worked at least 1,250 hours for Defendants within the 12-month period immediately preceding her request for FMLA leave and retaliatory termination by Defendant. See 29 U.S.C. §2611 (2).

88. Defendant is a covered employer under the FMLA, inasmuch as Defendant is engaged in commerce or in an industry or activity affecting commerce and employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding year. 29 U.S.C. § 2611(4).

89. Plaintiff was entitled to leave under the FMLA, *see 29 U.S.C. § 2612 (a)(1).*

90. Plaintiff properly notified Defendant of her need to take FMLA leave, obtained the necessary medical certifications, insisted on exercising her right to take FMLA, and otherwise fulfilled all of her obligations for taking medical leave.

91. Plaintiff fully informed Defendant of the nature and scope of her child's serious medical condition and she went through all of the proper avenues to get approval for her requested leave to recover from the injury.

92. Plaintiff was entitled to twelve (12) weeks of leave as provided pursuant to the FMLA, because she was a qualifying employee, as alleged above, and she had not taken any other FMLA leave.

93. Defendant violated the FMLA by terminating Plaintiff's employment based on her taking time off as allowed under the FMLA.

94. Defendant terminated Plaintiff in retaliation for Plaintiff attempting to take FMLA leave and/or attempts to gain coverage under FMLA and/or Plaintiff's beginning to take time off as allowed under the FMLA.

95. There was no legitimate non-discriminatory or non-retaliatory basis for Defendants' termination of Plaintiff.

96. Defendants' violations were knowing, willful, malicious, and with reckless disregard for the effect on Plaintiff.

97. There exists a causal link between Plaintiff availing himself of FMLA rights and the subsequent termination and disparate treatment suffered by Plaintiff while employed by the Defendant.

98. Said discriminatory, unlawful and willful conduct is in direct violation of FMLA 29 U.S.C. § 2615(a)(2).

## COUNT II
### *INTERFERENCE IN VIOLATION OF THE FMLA*

99. Plaintiff realleges and incorporates by reference all the preceding paragraphs, as if fully set forth herein.

100. Plaintiff's serious medical condition required Plaintiff to take time off of work, Defendant was fully aware of Plaintiff's need for time off and approved that leave provided Plaintiff with time off work, yet Defendant failed to reinstate the Plaintiff to the protected position she had occupied before the FMLA leave or and Defendant failed to reinstate Plaintiff to an equivalent position.

101. Defendant also interfered in other ways, described in other portions of this complaint.

### **PRAYERS FOR RELIEF FOR FMLA CLAIMS**

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

A. Statutory damages for lost wages, benefits and other compensation, plus all accrued interest on such sums at the statutory rate, pursuant to 29 U.S.C.A. § 2617 (a)(1)(A)(i) and (ii);

B. Monetary damages to compensate Plaintiff for all future lost salary and benefits;

C. Additional liquidated damages equal in the amount of the above requested amounts in Prayers A and B , pursuant to 29 U.S.C.A. § 2617 (a)(1)(B) and/or 29 U.S.C. § 2617(a)(1)(A)(iii);

D. Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to 29 U.S.C.A. § 2617 (a)(1)(B);

E. Judgment declaring that the actions of the defendant described herein have violated the plaintiff's rights under 29 U.S.C. §§ 2614(a)(1), 2614(a)(2), and 2615(a);

F. Judgment against the Defendant awarding Plaintiff's costs, disbursements, prejudgment interest lost and/or incurred by reason of the violation.

G. Judgment against Defendant, awarding damages for any wages, salary, employment benefits and other compensation;

H. Injunctive and declaratory relief with regard to Defendants' unlawful FMLA policies and to force Defendants to cease in enforcing said policies against the hundreds of other persons employed by them.

I. Damages which satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and this Court deem just under the circumstances;

J. Attorney's fees, interest on said attorney's fees, expert witness fees; and

K. Any and all other such relief as this Court deems just and equitable.

**JURY DEMAND**
**TRIAL DEMANDED ON ALL CLAIMS SO TRIABLE**

Dated October 12, 2023

                                              Respectfully submitted,

                                              By: /S/ John C. Ireland

John C. Ireland
The Law Office of John C. Ireland
636 Spruce Street
South Elgin ILL 60177
630-464-9675
FACSIMILE 630-206-0889
Attorneyireland@aol.com
Attorney Number 6283137